FILED
December 16, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____NM_____
            DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| DONALD BRASSFIELD, § <br> TDCJ No. 02270561, § <br> § <br> Petitioner, § <br> § <br> v. § <br> § <br> BOBBY LUMPKIN, Director, § <br> Texas Department of Criminal Justice, § <br> Correctional Institutions Division, § <br> § <br> Respondent. § | CIVIL NO. SA-23-CA-0534-OLG |

## MEMORANDUM OPINION AND ORDER

Before the Court are *pro se* Petitioner Donald Brassfield's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) and supplemental Memorandum in Support (ECF No. 2). In the § 2254 petition, Petitioner challenges the constitutionality of his 2019 state court conviction for aggravated sexual assault of a child, arguing, among other things, that the prosecution committed misconduct and that he received ineffective assistance from his direct appeal counsel. Also before the Court are Respondent Bobby Lumpkin's Answer (ECF No. 18) and Petitioner's Reply (ECF No. 26) thereto.

Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

### I. Background

In June 2019, a Guadalupe County trial court convicted Petitioner of one count of aggravated sexual assault of a child and sentenced him to fifty years of imprisonment. *State v.*

*Brassfield*, No. 16-1733-CR-A (25th Dist. Ct., Guadalupe Cnty., Tex. June 7, 2019); (ECF No. 19-19 at 2-4). The Texas Fourth Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion on direct appeal. *Brassfield v. State*, No. 04-19-00432-CR, 2021 WL 2942445 (Tex. App.—San Antonio, July 14, 2021, pet. ref'd); (ECF No. 19-23). The Texas Court of Criminal Appeals then refused his petition for discretionary review. *Brassfield v. State*, No. 0595-21 (Tex. Crim. App. Oct. 20, 2021). (ECF No. 19-27).

Thereafter, Petitioner challenged the constitutionality of his conviction by filing an application for state habeas corpus relief in the trial court. *Ex parte Brassfield*, No. 94,522-01 (Tex. Crim. App.); (ECF No. 19-28 at 10-25). The State did not answer Petitioner's habeas application, nor did the trial court issue any findings of fact and conclusions of law. Nevertheless, the Texas Court of Criminal Appeals eventually denied the application without written order. (ECF No. 19-32).

Petitioner initiated the instant proceedings by filing a petition for federal habeas corpus relief on April 18, 2023. (ECF No. 1 at 10). In the petition and supplemental memorandum filed with it, Petitioner raises the following four allegations that were rejected by the Texas Court of Criminal Appeals during his state habeas proceedings:

(1) the lead investigator for the State lost potentially exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963);

(2) the prosecution committed misconduct by failing to disclose the *Brady* evidence and by arguing that the evidence was not lost in "bad faith";

(3) his appellate counsel rendered ineffective assistance by filing a frivolous motion for new trial and then an unwarranted *Anders* brief on direct appeal; and

(4) Article 38.07 of the Texas Code of Criminal Procedure is unconstitutional because it lowers the amount of evidence necessary to obtain a conviction.

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

Federal habeas review is straightforward when a state habeas court has provided reasons for its decision to deny habeas relief: the reviewing federal court must "train its attention on the

particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims." *Wooten v. Lumpkin*, 113 F.4th 560, 566 (5th Cir. 2024) (citing *Wilson v. Sellers*, 584 U.S. 122, 125 (2018)). But when a state court's denial of habeas relief is not explained, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Id.* If, as in this case, there is no reasoned state court decision to look to, a federal court "must determine what arguments or theories supported or, . . . could have supported, the state court's decision." *Richter*, 562 U.S. at 102.

Regardless of whether a reasoned explanation was provided, a state court's rejection of a claim on the merits precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Id.* at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Merits Analysis

**A.   Prosecutorial Misconduct (Claims 1, 2)**

In his first two claims for relief, Petitioner alleges the State's lead investigator, Officer Christopher Soto, intentionally lost recordings of two witness interviews that he contends were "crucial pieces of exculpatory evidence." (ECF No. 2 at 5). According to Petitioner, the prosecution then compounded this error by actively covering for the investigator's "bad faith" without conducting an adequate investigation into the loss of the recordings. Petitioner contends

the actions of both the investigator and prosecution violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963).

Petitioner raised these allegations during Petitioner's state habeas proceedings. (ECF No. 19-28 at 15-17, 36-43). The Texas Court of Criminal Appeals, without the benefit of any findings or conclusions from the state habeas trial court, denied habeas relief without a written order. (ECF No. 19-32). As discussed below, Petitioner fails to demonstrate the state court's rejection of the allegations was unreasonable.

1. Relevant Background

Petitioner was charged with sexually assaulting his eight-year-old stepdaughter, M.H., in January 2014. (ECF No. 19-6 at 11). In June 2016, M.H. made an outcry statement to her guardian, Erin Brassfield, and her husband, James Smith. (ECF No. 19-7 at 85-86). Following this conversation, Erin contacted the Guadulupe County Children's Advocacy Center (CAC), who in turn contacted the Cibolo Police Department. *Id.* at 38, 84. Officer Soto was assigned to the case, and he attended an interview at the CAC where M.H. made a similar outcry statement. *Id.* at 38.

As part of his investigation, Officer Soto obtained written witness statements from both Erin and James concerning M.H.'s outcry. (ECF No. 19-17 at 50-54). He also obtained video recorded statements from Erin and James, but at some point these recordings were lost. (ECF No. 19-7 at 39-41). Nevertheless, both Erin and James testified at Petitioner's trial and their written statements were presented to the trial court. (ECF No. 19-9 at 160). After considering this testimony, as well as testimony from Officer Soto, the court found it "unfortunate" that the recordings had been lost but that it wasn't done in "bad faith." *Id.* The court then weighed the credibility of all the trial witnesses and found Petitioner guilty of aggravated sexual assault.

2.   Legal Standard

The State has a duty to preserve and disclose exculpatory evidence that is material to either guilt or punishment. *Brady,* 373 U.S. at 87. Evidence is material if the exculpatory value of the evidence was apparent before it was lost or destroyed and was of such a nature that the defendant would have been unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta,* 467 U.S. 479, 488-89 (1984). If, however, the evidence is only "potentially useful," "failure to preserve [it] does not constitute a denial of due process of law" "unless a criminal defendant can show bad faith on the part of the police." *Arizona* v. *Youngblood,* 488 U.S. 51, 58 (1988).

Given these precedents, a "[f]ailure to preserve material exculpatory evidence violates due process rights irrespective of whether the government acted in good faith or bad faith." *United States v. McNealy,* 625 F.3d 858, 868 (5th Cir. 2010). On the other hand, "a failure to preserve *merely potentially useful* evidence does not constitute a denial of due process absent a showing of bad faith." *Id.* (emphasis added). Therefore, to establish a violation of due process, Petitioner must demonstrate the withheld recordings were either "(1) material and exculpatory or (2) only potentially useful, in combination with a showing of bad faith on the part of the government." *Bower v. Quarterman,* 497 F.3d 459, 476 (5th Cir. 2007) (citation omitted).

3.   Analysis

Throughout his brief in support, Petitioner refers to the missing witness recordings as potentially "exculpatory" evidence that he was prevented from presenting at trial due to the State's actions. (ECF No. 2 at 5, 8-10). Yet, Petitioner provides no argument or evidence explaining how the witnesses' recorded statements could be considered exculpatory, particularly given the fact that they both submitted written statements and testified at trial about M.H.'s

6

outcry statement. "Absent evidence in the record," a court cannot "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (citing *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983)). Petitioner's conclusory assertions are not enough to establish the evidence was exculpatory, much less that "the exculpatory value of the evidence was apparent before it was lost or destroyed[.]" *Bower*, 497 F.3d at 476 (quoting *Trombetta*, 467 U.S. at 489); *see also United States v. Moore*, 452 F.3d 382, 388 (5th Cir. 2006) (finding defendant's conclusory assertions regarding withheld evidence were not enough to demonstrate materiality).

Similarly, Petitioner fails to demonstrate that the missing recordings were material to either his guilt or punishment. "Evidence is material under *Brady* when there is a 'reasonable probability' that the outcome of the trial would have been different if the evidence had been disclosed to the defendant." *United States v. Runyan*, 290 F.3d 223, 247 (5th Cir. 2002) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Here, while Petitioner appears to take issue with certain alleged contradictions between the testimonies of Erin, James, and Officer Soto—namely, the date the written statements were signed and whether or not James was present when M.H. made her outcry statement to Erin—such minor discrepancies are distinctions without a difference. Ultimately, both Erin and James testified that M.H. made an outcry statement to them that she had been sexually assaulted by Petitioner. Thus, any evidence concerning these non-exculpatory issues "would not have significantly added to the impeachment ammunition that [Petitioner] already had." *Cobb v. Thaler*, 682 F.3d 364, 380 (5th Cir. 2012); *Miller v. Dretke*, 431 F.3d 241, 251 (5th Cir. 2005)

(finding evidence that provides only incremental impeachment value does not rise to the level of *Brady* materiality).

The value of such impeachment evidence is further diminished when considering the strength of the State's case against Petitioner. *See Rocha v. Thaler*, 619 F.3d 387, 396 (5th Cir. 2010) (finding materiality depends "almost entirely on the value of the [missing] evidence relative to the other evidence mustered by the state.") (citation omitted). Although Petitioner makes no argument concerning the value of the missing recordings, it appears that he believes the recordings could have been used to impeach Erin's testimony concerning M.H.'s outcry statement. But in addition to Erin's testimony, the State presented the testimony of M.H. herself, as well as the corroborating testimonies of Officer Soto and SANE nurse Noella Hill, both of whom observed separate outcry statements from the victim. *See* ECF No. 19-7 at 34-77 (testimony of Officer Soto), 109-34 (testimony of Noella Hill), 135-66 (testimony of M.H.). The State also presented testimony regarding extraneous offenses committed by Petitioner that further demonstrated Petitioner's guilt in the instant case. *See* ECF Nos. 19-7 at 172-230 (testimony of Danielle Kelley), 19-8 at 6-50 (testimony of Alyssa Tatsch).

Given the overwhelming nature of the evidence presented by the State establishing Petitioner's guilt, Petitioner fails to establish the result would have been different had the missing recordings been available to Petitioner prior to trial. *Bagley*, 473 U.S. at 685. Petitioner thus has not demonstrated that the missing evidence was "material exculpatory evidence." *McNealy*, 625 F.3d at 868. As such, because the lost evidence is, at most, "potentially useful," Petitioner must demonstrate that the State acted in bad faith in failing to preserve the evidence. *Youngblood*, 488 U.S. at 57-58; *Bower*, 497 F.3d at 476. He fails to make this showing as well.

To demonstrate bad faith on the part of the State, Petitioner again points to subtle inconsistencies, this time between Officer Soto's report (indicating the statements were given June 24, 2016) and the date he, Erin, and James testified that the statements were given (June 22, 2016). (ECF No. 2 at 6-8). Petitioner contends this disparity indicates deception and shows that Officer Soto falsified his report in order to cover up his actions. It does no such thing. Indeed, other than vague discrepancies—real or imagined—in Officer Soto's report and testimony, Petitioner has not provided any argument or facts that would support a bad faith determination, such as evidence that the State destroyed the evidence "to gain some tactical advantage" or "to harass [Petitioner]." *Youngblood*, 488 U.S. at 57 (citation omitted).

Because Petitioner fails to meet the burden of demonstrating either materiality or bad faith, he has not shown that the state court's rejection of his claims during his state habeas proceedings was objectively unreasonable, much less that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Federal habeas relief is therefore denied.

**B.   <u>Appellate Counsel</u> (Claim 3)**

Petitioner next contends he received ineffective assistance of counsel during his direct appeal proceedings. A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The familiar standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984), to prove that counsel rendered unconstitutionally ineffective assistance applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir.

2013). Thus, to obtain relief, Petitioner must demonstrate that (1) appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of Petitioner's appeal would have been different. *See Robbins*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2015). Petitioner does not meet this requirement.

Petitioner contends his appellate counsel was ineffective for failing to raise the above *Brady* claims in either his motion for new trial or in his direct appeal brief. As discussed previously, however, these allegations have no merit. Further, appellate counsel is not required to raise every possible non-frivolous claim on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Because the above claims lack merit, appellate counsel was not deficient for failing to raise them. For the same reason, there is no likelihood Petitioner would have obtained relief had they been raised in a motion for new trial or on direct appeal, and therefore no prejudice was caused by appellate counsel's failure to raise the claims. Petitioner's allegation concerning appellate counsel was rejected by the state court during his state habeas proceedings, and Petitioner has not shown this rejection on the merits to be contrary to, or an unreasonable application of, the *Strickland* standard. *Richter*, 562 U.S. at 101. Federal habeas relief is therefore denied.

C.   **Article 38.07** (Claim 4)

Lastly, Petitioner alleges that Article 38.07 of the Texas Code of Criminal Procedure is unconstitutional because it reduces the State's burden of proof. In relevant part, Article 38.07 provides:

> (a)   A conviction [for aggravated sexual assault] is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred.
>
> (b)   The requirement that the victim inform another person of an alleged offense does not apply if at the time of the alleged offense the victim was a person . . . 17 years of age or younger.

Because Article 38.07 authorizes a criminal conviction based solely on the victim's uncorroborated testimony, Petitioner contends the amount of evidence required from the State to overcome the presumption of innocence is unconstitutionally low. Petitioner is mistaken.

To start, it is unclear whether Article 38.07, a statute concerning *uncorroborated* testimony by the victim, even applies in this case. As discussed previously, the testimony of M.H., the victim in this case, was corroborated by several witnesses, including her mother and the nurse who conducted the SANE examination. *See* ECF No. 19-7 at 78-108 (testimony of Erin Brassfield), 109-34 (testimony of Noella Hill). Testimony regarding extraneous offenses committed by Petitioner further supported M.H.'s testimony. *See* ECF Nos. 19-7 at 172-230 (testimony of Danielle Kelley), 19-8 at 6-50 (testimony of Alyssa Tatsch).

Regardless, in the one case cited by Petitioner, the Supreme Court determined that Article 38.07 does not violate due process by reducing the State's burden of proof. *Carmell v. Texas*, 529 U.S. 513, 539 (2000) (stating that Article 38.07 does not alter the burden of proof); *see also Lindquist v. State*, 922 S.W.2d 223, 228 (Tex. App.—Austin 1996, pet. ref'd) (finding Article 38.07 "does not permit conviction on *less* evidence . . . because . . . the State maintains the

11

burden of proving all elements of the penal code provision beyond a reasonable doubt.") (emphasis in original). Petitioner has provided no relevant authority supporting his contention that Article 38.07 subverts the presumption of innocence by lowing the burden of proof. As such, federal habeas relief is unwarranted.

## IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El,* 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V. Conclusion and Order

After careful consideration, the Court concludes Petitioner has failed to establish that the state court's rejection of his allegations on the merits during Petitioner's state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on

an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial, appellate, and habeas corpus proceedings. As a result, Petitioner's federal habeas corpus petition does not warrant relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Donald Brassfield's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

**SIGNED** this the 16 day of December, 2024.

**ORLANDO L. GARCIA**
**United States District Judge**

13